## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## COURT FILE NO.: 20-cv-800

| | |
|---|---|
| Kevin Rouse, on behalf of himself and all others similarly situated, | |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Hilton Worldwide Holdings, Inc., | |
| Defendant. | |

## <u>INTRODUCTION</u>

1.    Kevin Rouse ("Plaintiff"), on behalf of himself and all others similarly situated, asserts claims against Hilton Worldwide Holdings, Inc. ("Defendant" or "Hilton"), an America multi-national hospitality company.

2.    The Fair and Accurate Credit Transactions Act ("FACTA") provides in relevant part that "no person that accepts credit cards or debt cards for the transaction of business shall print more than the last 5 digits of the card number…upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1691c(g).

3.    Congress enacted FACTA in 2003 to assist in the prevention of identity theft and credit and debit card fraud.  In the statement provided by the President during the signing of the bill, the President declared that:

> This bill also confronts the problem of identity theft.  A growing number of Americans are victimized by criminals who assume their identities and cause havoc in their financial affairs.  With this legislation, the Federal Government is protecting our citizens by taking the offensive against identity theft.

President George W. Bush, Remarks at the Signing of the Fair and Accurate Credit Transactions Act (Dec. 4, 2003).

4.      The law provided a period of three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

5.      Defendant has willfully violated this law and failed to protect Plaintiff and others similarly situated against identity theft and credit card and debit card fraud by printing more than the last five digits of the card number on paper receipts provided at the point of sale to credit card and debit card cardholders transaction business with Defendant. More specifically, Defendant printed the first four digits and the last four digits of the card number of the receipts. This conduct is in direct violation of FACTA.

6.      Courts have emphasized the purpose of FACTA. For example, the Ninth Circuit explained: "[i]n fashioning FACTS, Congress aimed to 'restrict the amount of information available to identity thieves.' 149 Cong. Rec. 26,891 (2003)(statement of Sen. Shelby)." *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010).

7.      Similarly, the Seventh Circuit noted, "[i]dentity theft is a serious problem, and FACTS is a serious congressional effort to combat it." *Redman v. Radioshack Corp.*, 768 F.3d 622, 626-627, 639 (7th Cir. 2014).

8.      Plaintiff, on behalf of himself and all others similarly situated, brings this action against Defendant based on Defendant's violation of 15 U.S.C. §§ 1681 *et seq.*

9.     Plaintiff seeks, on behalf of himself and the class, statutory damages, punitive damages, costs and attorney's fees, all of which are expressly made available by statute, 15 U.S.C. § 1681n.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

11.    Venue in this district is proper because Plaintiff is located in the State of Minnesota and Defendant does business in the State of Minnesota.

## PARTIES

12.    Plaintiff is a natural person who resides in the county of Hennepin, state of Minnesota.

13.    Defendant, Hilton Worldwide Holdings, Inc. and is a domestic corporation whose principal address is 7930 Jones Branch Dr, McLean, Virginia 22102, and whose registered agent for service of process in the state of Delaware is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

14.    Defendant owns, operates and/or franchises Hilton-branded establishments throughout the world.

## FACTS RELATED TO PLAINITIFF'S TRANSACTIONS

15.    On or about December 5, 2019, Plaintiff made a purchase with his personal credit/debit card at the Hilton Fiji Beach Resort & Spa – Deli Restaurant in Denarau Island, Fiji.

16.    Plaintiff received a paper receipt at the point of sale which displayed the first four and last four digits of Plaintiff's personal credit/debit card, in violation of FACTA's requirement.

3

17.    On or about December 5, 2019, Plaintiff made another purchase with his personal credit/debit card at the Hilton Fiji Beach Resort & Spa – Deli Restaurant in Denarau Island, Fiji.

18.    Plaintiff received a paper receipt at the point of sale which displayed the first four and last four digits of Plaintiff's personal credit/debit card, in violation of FACTA's requirement.

19.    On or about December 6, 2019, Plaintiff made a purchase with his personal credit/debit card at the Hilton Fiji Beach Resort & Spa – Deli Restaurant in Denarau Island, Fiji.

20.    Plaintiff received a paper receipt at the point of sale which displayed the first four and last four digits of Plaintiff's personal credit/debit card, in violation of FACTA's requirement.

21.    On or about December 8, 2019, Plaintiff made a purchase with his personal credit/debit card at the Hilton Fiji Beach Resort & Spa – Jack's of Fiji in Denarau Island, Fiji.

22.    Plaintiff received a paper receipt at the point of sale which displayed the first four and last four digits of Plaintiff's personal credit/debit card, in violation of FACTA's requirement.

23.    On or about December 8, 2019, Plaintiff made a purchase with his personal credit/debit card at the Hilton Fiji Beach Resort & Spa – Jack's of Fiji in Denarau Island, Fiji.

24.    Plaintiff received paper receipts at the point of sales which displayed the first four and last four digits of Plaintiff's personal credit/debit card, in violation of FACTA's requirement.

25.     Plaintiff has incurred the burden of retaining possession of his receipts from Defendant in order to safeguard his personal credit/debit card information that was displayed by Defendant's violations of FACTA.

26.     The displaying of more than five digits of Plaintiff's personal credit/debit card numbers on the receipts is specifically prohibited by FACTA and is the very harm that congress sought to prevent by turning such disclosure into an actionable tort.

27.     Defendant's violations of FACTA has caused Plaintiff to be at an increased risk of identity theft and payment card fraud, which invades the exact privacy interests of Plaintiff recognized at common law and for which FACTA was intended to guard against.

28.     Upon information and belief, at the time of Plaintiff's transaction described above, Defendant was routinely presenting receipts to its customers at the point of sale at its establishments which receipts displayed more than the last give digits of the customers' credit and/or debit cards, in violation of the requirements of FACTA.

## INDUSTRY KNOWLEDGE REGARDING THE TRUNCATION OF CREDIT/DEBIT CARD ACCOUNT INFORMATION

29.     In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft. A critical part of this joint effort was the truncation of personal data from credit and debit card receipts presented to consumers at the point of sale.

30.     On March 6, 2003, Visa CEO Carl Pascarella held a joint press conference with Senators Judd Gregg, Jon Corzine, Patrick Leahy and Dianne Feinstein to announce

Visa USA's new account truncation program to protect consumers from identity theft.

At the press conference, Mr. Pascarella stated:

> "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. This is an added security measure for consumers that doesn't require any action by the cardholder. We are proud to be the first payments brand to announce such a move to protect cardholders' identities by restricting access to their account information on receipts.

> "The first phase of this new policy goes into effect July 1, 2003 for all new terminals. I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to groundwork that we began together several years ago.

> ****

> "Visa USA is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft. We look forward to continuing our joint efforts; after all, we share the same goals."

31.    On July 9, 2003, L. Richard Fischer presented a written statement to the United States House of Representatives Committee on Financial Services on behalf of Visa USA, Inc., supporting the truncation requirements that ultimately became FACTA. Therein, Mr. Fischer stated:

> Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the

6

expiration date upon receipts provided to cardholders at the point of sale…

32. Visa USA's agreements with merchants that accept Visa brand credit or debit cards are defined in part in a manual entitled Rules for Visa Merchants, Card Acceptance and Chargeback Management Guidelines ("Visa Merchant Rules"). The Visa Merchant Rules manual includes a description of Visa's truncation requirements. For example, the 2006 edition of the Visa Merchant Rules states:

> Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt. After July 1, 2006, the expiration date should not appear at all. Existing POS terminals must comply with these requirements by July 1, 2006.

33. The truncation standards set forth in the Visa Merchant Rules, which are part of the contract between Visa and merchants that accept Visa debit and/or credit cards, served as the basis for what ultimately became the truncation requirements of FACTA.

34. Visa continues to inform merchants of the requirements of FACTA. On July 14, 2010, in its publication titled: "Visa Best Practices for Primary Account Number Storage and Truncation," the following is strongly recommended for cardholder receipts:

> "Disguise or suppress all but the last four digits of the PAN, and suppress the full expiration date, on the cardholder's copy of a transaction receipt created at a point of sale (POS) terminal or an ATM (already required for merchants in the U.S., Europe, and CEMEA; Visa will apply this rule across all regions in the near future to provide global consistency)."

35. FACTA's requirement that merchants truncate credit and debit card digits and expiration dates was phased in over a three-year period. During the three-year phase-in period, there was extensive publicity regarding the law's requirements.

36. Many trade associations apprised their merchant members that FACTA requires truncation of the entire expiration date and all but the last five digits of the cardholder account number.

37. For example, the cover-article of the Winter 2007 edition of Texas Business Today includes an extensive discussion of FACTA's truncation requirements.

38. In May 2007, the Federal Trade Commission published a widely circulated and extensively publicized FTC Business Alert that reiterated the truncation requirements of FACTA.

39. Heartland Payment Systems, Inc. ("Heartland") provides credit and debt card, payroll, and related procession services to restaurant, hotel, and retail merchants throughout the United States, and indicates on its website that it provides services to over 137,000 merchants. In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

> Your credit card terminal is now – or will soon be required by law or the bankcard association to truncate – or limit – the information that can appear on electronically printed sales receipts.
>
> What that means is that on all cardholder numbers:
>
> ■    The expiration date much be eliminated
>
> ■    All but the last four numbers of the card number must be obscured.

8

40.    In 2006, Heartland broadly disseminated a second pamphlet, which included the

following statement:

> Make every transaction a sage one
>
> ****
>
> ■    The cardholder's receipt should not include the card's expiration
>     date and ***should only include*** the last 4 or 5 digits of the card
>     number.

41.    Many trade associations apprised their merchant members that FACTA imposed

truncation requirements mirroring Visa's truncation requirements.  For example, the

Virginia Retail Merchants Association reported in its February/March 2005

Newsletter that:

> FACTA says receipts for credit and debit card transactions may not
> include more than the last five digits of the card number or expiration
> date.

42.    In April 23, 2003 edition of the monthly magazine for the National Association of

Convenience Stores ("NACS"), the national trade association for convenience and fuel

retailers, an article title "Visa USA Targets Identity Theft" appeared and included the

following language:

> "[A]t a press conference held last month with Sen. Dianne Feinstein
> Case 2:18-cv-01120-MRH Document 1 Filed 08/23/18 Page 9 of 20 10
> (D-CA), Visa announced its account truncation security policy. This
> protects consumers from identity theft by limiting cardholders'
> information on receipts to the last four digits of their accounts. The
> policy will also eliminate the card's expiration date from receipts
> altogether. Feinstein has introduced legislation to combat identity theft."

43.    The April 2005 edition of the Food Industry Advisor, the newsletter for the

Pennsylvania Food Merchants Association and Pennsylvania Convenience Store

Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

> "[A]ccording to the FACT Act, `no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction. . . . .'"

This same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

44.    In its Spring 2004 Newsletter, the Connecticut Restaurant Association Newsletter included an article regarding Requirements for Credit Card Truncation, which stated:

> "[T]here is currently no Connecticut state law, so the two ruling requirements come from VISA and a new Federal Fair Credit Reporting Act signed in December 2003.
>
> Truncation requires that all but the last four digits of the cardholder account number, along with the entire expiration date, be suppressed on the cardholder copy of the transaction receipt generated from all electronic terminals. . . ."

45.    After the enactment of FACTA, the Wisconsin Restaurant Association issued a "Credit Card Truncation" Alert to its members, which stated:

> "You may have been hearing about credit card truncation lately. This is what you need to know. Credit card truncation removes all but the last four (or five) digits of a credit card account number and the expiration date from the sales receipt. For example: A non-truncated receipt would list: Acct. # 1234 5678 7654 3210 Exp. 10/05 while a truncated receipt would show:
> Acct. # **** **** **** 3210 Exp ****.
> * * * *
> The federal Fair and Accurate Credit Transaction Act of 2003, prohibits any person that accepts credit cards or debit cards from printing the expiration date and more than the last five digits of the

10

card number upon any terminal-generated receipt provided to the cardholder at the point of sale . . . ."

46. In the January 2005 edition of the Massachusetts Restaurant Association Newsletter, an article appeared apprising Association members that both Visa and MasterCard require truncation of the entire expiration date and all but the last four digits of the cardholder account number.

47. Similar information was disseminated by the Ohio Restaurant Association, the Oklahoma Restaurant Association, a significant number of other restaurant trade associations, and retail merchant trade associations.

48. In the March/April 2006 Edition of the Ohio Independent Automobile Dealers' Association Dealer News Magazine, an Article was published entitled "What You Should Know about Credit and Debit Card Processing and the FACTAs about Card Truncation." The article states:

> "What is Card Truncation? This federal law sets deadlines by which the receipt electronically printed from a credit card sale must be truncated – meaning, the receipt given to the customer shows no more than the last five digits of the customer's credit card number and does not show the expiration date.
>
> Business owners are responsible for merchant account compliance with the truncation regulations and must make sure their printed cardholder receipts do not contain expiration dates or full account numbers."

This same article appeared in the March/April edition of the West Coast Independent Automobile Dealer News.

49. The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, The

Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act."

In relevant part, this publication stated:

> "Under the FACT Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they print the expiration date upon any receipt provided to the cardholder at the point of sale."

50.    In the November 18, 2004, edition of the Compliance Challenge, published by the Credit Union National Association News, a report was published that included the following language:

> "FACTA prohibits anyone that accepts credit/debit cards to print more than the last 5 digits of the card number or expiration date on any receipt at the point of sale or transaction . . . ."

51.    In the October 10, 2003, edition of the PT Bulletin, a Newsletter for the American Physical Therapy Association, an article appeared titled, "Truncation Requirement Now in Effect for Credit Card Processing." In relevant part, this article stated:

> "Physical therapists who accept credit card payments from patients and clients face new processing requirements from major credit card companies. In an effort to minimize opportunities for credit card fraud, Visa and MasterCard . . . .have mandated that credit card account numbers and expiration dates be masked on all receipts. Compliance with this requirement is not optional . . . ."

52.    The International Franchise Association published an article on its website and its publication, Franchise World, in May 2007, titled "Truncation of Card Account Numbers on Electronic Receipts." The article stated:

> One FACTA identify theft-related provision requires the "truncation" of account numbers on electronic credit-and debit-card receipts. Specifically, electronically printed credit- and debit-card receipts provided to consumers shall not include more than the last five digits of the card number or the expiration date.  While this provision was

12

enacted in December 2003, it was phased in gradually, by requiring merchants with new electronic card processing machines in use on or after Jan. 1, 2005, to comply by December 2004. Merchants with older machines, those in use prior to Jan. 1, 2005, were given three years from the enactment of these amendments to come into compliance, by Dec. 1, 2006.

53.    On June 3, 2008, House Bill HR 4008 (known as the so-called Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, §3(a), June 3, 2008, 122 Stat. 1566)(hereafter "Clarification Act") was signed into law by the President.

54.    Specifically, Section 3(a) of the "Clarification Act" states, in relevant part:

> [F]or purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004 and the date of enactment of this subsection but otherwise complied with the requirements of Section 605(g) for such receipt shall not be in willful noncompliance with Section 605(g) by reason of printing such expiration date on the receipt.

55.    Thus, the "Clarification Act" provided amnesty to those businesses which had been sued for violations of FACTA's prohibition against the printing of expiration dates on electronically printed receipts between December 4, 2004 and June 3, 2008 (in those instances when the civil action filed against the business was not yet "final"). However, the "Clarification Act" is inapplicable to any merchant that accepts payment by credit and debit cards and who violates the law by printing expiration dates from June 4, 2008 forward. The "Clarification Act" is also facially inapplicable to FACTA claims asserting that a merchant printed more than the last five digits of a credit/debit card account number on a receipt provided to a consumer cardholder at the point of sale.

56.   The passage of the "Clarification Act," however, was championed by the national Chamber of Commerce and added to the extensive amount of publicity regarding the requirements of FACTA.

## DEFENDANT'S KNOWLEDGE OF FACTA'S TRUNCATION REQUIREMENTS

57.   Defendant had actual knowledge of FACTA's truncation requirements, or acted recklessly with respect to FACTA's truncation requirements, specifically including the requirement that no more than the last five digits of credit and debit cards be printed on receipts presented to consumers at the point of sale.

58.   Upon information and belief, during all times relevant to this Complaint, Defendant has had agreements with various credit card issuers, including VISA, Mastercard, American Express and others, and those agreements apprised Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

59.   Upon information and belief, prior to the transaction at issue, Defendant received periodic communications from credit card issuers and/or its merchant bank advising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

60.   Upon information and belief, prior to the transaction at issue, Defendant received monthly statements from its merchant bank (or other similar entity that performed credit and debit card payment clearing services for Defendant) which apprised Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

61. Upon information and belief, prior to the transaction at issue, Defendant received written information from its POS (Point of Sale) provider(s) apprising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

62. Upon information and belief, prior to the transaction at issue, Defendant received information from trade associations and/or other similar entities apprising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

63. Upon information and belief, the individuals in charge of Defendant's ownership had actual knowledge of FACTA's requirements.

64. Defendant relies on the business experience of these individuals to operate their companies.

65. Despite its knowledge of FACTA and its truncation requirements, Defendant violated the requirements of FACTA.

## CLASS ACTION ALLEGATIONS

66. Plaintiff brings this class action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure.

67. Plaintiff seeks to represent a class of persons to be defined as follows:

> *All persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring within the two years prior to the filing of this Complaint, on which Defendant printed 1) more than the last five digits of the person's credit card or debit card number, and/or, 2) the expiration date of the person's credit card number.*

68.     Excluded from the class is any individual who has suffered identity theft as a result of Defendant's violations of FACTA as delineated in this Complaint.

69.     <u>Numerosity:</u> The class described above is so numerous that joinder of all individual members in one action would be impracticable.

70.     The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

71.     Plaintiff is informed and believes, and thereon allege, that there are at minimum, thousands of members of the class described above.

72.     The exact size of the class and the identities of the individual members thereof are ascertainable through Defendant's records, including but not limited to Defendant's sales and transaction records.

73.     Members of the class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notices, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by this Court.

74.     <u>Typicality:</u> Plaintiff's claims are typical of the claims of the members of the class.

75.     The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful and willful conduct.

76.     Plaintiff and members of the class were each customers of Defendant, each having made a purchase or transacted other business with Defendant at an applicable time using a credit card and/or debit card.

77.   At the point of such sale or transaction with Plaintiff and members of the class, Defendant provided to Plaintiff and each member of the class a receipt in violation of 15 U.S.C. §1681c(g).

78.   <u>Commonality and Predominance:</u> There is a well-defined community of interest and common questions of fact and law affecting members of the class.

79.   The questions of fact and law common to the class predominate over questions which may affect individual members and include the following:

a. Whether Defendant's conduct of providing Plaintiffs and the members of the class with a sales or transaction receipt whereon Defendant printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card or debit card violated the FACTA, 15 U.S.C. §§1681 et seq.;

b. Whether Defendant's conduct was willful; and

c. Whether Plaintiffs and members of the class are entitled to statutory damages, punitive damages, costs and/or attorneys' fees for Defendant's acts and conduct.

80.   <u>Adequacy of Representation:</u> Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class.

81.   Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class.

82.   In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

83.   <u>Superiority:</u> A class action is superior to other available means for the fair and efficient adjudication of the claims of the class.

84.    While the aggregate damages which may be awarded to the members of the class are likely to be substantial, the damages suffered by the individual members of the class are relatively small.

85.    As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the class to individually seek redress for the wrongs done to them.

86.    Plaintiff does not know of any other litigation concerning this controversy already commenced by or against any member of the class.

87.    The likelihood of the individual members of the class prosecuting separate claims is remote.

88.    Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues.

89.    In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the class.

90.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

91.    <u>Disavowal of Unconstitutional Damages</u>. To the extent that any award of class based statutory damages against Defendant might be adjudicated as violating Defendant's Due Process Rights under the United States Constitution, Plaintiff, on behalf of the

putative class they seek to represent, expressly request damages only to the fullest

extent allowed under the Constitution of the United States.

### FIRST CAUSE OF ACTION

**For Violation of 15 U.S.C. §§1681 *et seq*.**

**(On Behalf of Plaintiff and the Members of the Class)**

92.  Plaintiff hereby incorporates by reference the allegations contained in the above

paragraphs of this Complaint as if fully set forth herein.

93.  Plaintiffs assert this claim on behalf of themselves and the class against Defendant.

94.  Title 15 U.S.C. §1681c(g)(1) provides that:

> …no person that accepts credit cards or debit cards for the transaction
> of business shall print more than the last five digits of the card number
> or the expiration date upon any receipt provided to the cardholder at
> the point of sale of transaction.

95.  Defendant transacts business in the United States and accepts credit cards and/or

debit cards while transacting business with persons such as Plaintiff and the

members of the class. In transacting such business, Defendant uses cash registers

and/or other machines or devices that electronically print receipts for credit card

and/or debit card transactions.

96.  Defendant provided Plaintiff with an electronically printed receipt on which

Defendant printed the first four and last four digits of Plaintiff's credit/debit cards.

97.  Defendant, at the point of a sale or transaction with members of the class, provided

each member of the class with one or more electronically printed receipts on each

of which Defendant printed, for each respective class member, more than the last

five digits of such member's credit card or debit card number and/or printed the expiration date of such member's credit or debit card.

98. As set forth above, FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006.

99. Defendant knew of or should have known of FACTA's requirements concerning the truncation of credit and debit card numbers and prohibition on printing of expiration dates, and Defendant was informed about, or should have been informed about, the law.

100. Despite knowing and being repeatedly informed about FACTA and the importance of truncating credit card and debit card numbers and preventing the printing of expiration dates on receipts, and despite having had several years to comply with FACTA's requirements, Defendant willfully violated and continues to violate FACTA's requirements by, *inter alia*, printing more than five digits of the card number and/or the expiration date upon the receipts provided to members of the class – persons with whom Defendant transacts business.

101. Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and/or the expiration date upon the receipts provided to the cardholders. Defendant could have readily done the same.

102.   Defendant's willful violation of FACTA exposed Plaintiff and the members of the class to an increased risk of identity theft and credit and/or debit card fraud – the exact harm FACTA was intended to guard against.

103.   As a result of Defendant's willful violations of FACTA, Defendant is liable to Plaintiff and each member of the class in the statutory damage amount of "not less than $100 and not more than $1000" for each violation. 15 U.S.C. § 1681n(a)(1)(A).

104.   As a result of Defendant's willful violations of FACTA, Plaintiff and the members of the class are entitled to recover costs of suit and their reasonable attorneys' fees. 15 U.S.C. §1681n(a)(3).

105.   As a result of Defendant's willful violations of FACTA, Plaintiff and the members of the class are entitled to recover punitive damages. 15 U.S.C. §1681n(a)(2).

**PRAYER FOR RELIEF**

117.   WHEREFORE, Plaintiff, on behalf of himself and the members of the class, pray for:

a. An order certifying the class and appointing Plaintiff as the representatives of the class, and appointing counsel for Plaintiff as counsel for the class;

b. An award to Plaintiff and the members of the class of statutory damages pursuant to 15 U.S.C. §1681n(a)(1)(A) for Defendant's willful violations (up to but not exceeding the fullest extent allowed under the Constitution of the United States);

c. An award to Plaintiff and the members of the class of punitive damages pursuant to 15 U.S.C. §1681n(a)(2)(up to but not exceeding the fullest extent allowed under the Constitution of the United States);

d. Payment of costs of suit herein incurred pursuant to, *inter alia*, 15 U.S.C. §1681n(a)(3);

e. Payment of reasonable attorneys' fees pursuant to, *inter alia*, 15 U.S.C. §1681n(a)(3); and

f. For other and further relief as the Court may deem proper.


Dated this 25th day of March 2020.

Respectfully submitted,


By: *s/Thomas J. Lyons Jr.*

Thomas J. Lyons, Jr. Esq.
MN Attorney I.D. #: 65699
**CONSUMER JUSTICE CENTER P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 770-5830
tommy@consumerjusticecenter.com

***ATTORNEY FOR PLAINTIFF***

**VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF**

STATE OF MINNESOTA            )
                              ) ss
COUNTY OF _____)

       I, Kevin Rouse, having first been duly sworn and upon oath, depose and say as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.


                      s/Kevin Rouse _____
                      Kevin Rouse


Subscribed and sworn to before me
this 21 day of March 2020.


s/Douglas Scalia _____
Notary Public